UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROKIYAH V.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:22-CV-5206-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating the medical opinions of Dr. Wingate, Dr. Petaja, and Ms. Kimbel, and Plaintiff's testimony, and improperly assessed Plaintiff's residual functional capacity ("RFC"). Accordingly, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. §

405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On November 15, 2019, Plaintiff protectively filed for SSI, alleging disability as of November 1, 2017. *See* Dkt. 10; Administrative Record ("AR") 136, 147, 165, 263-272. The Plaintiff amend the alleged onset date to October 15, 2019. AR 107, 165. The application was denied upon initial administrative review and on reconsideration. *See* AR 145, 159.

ALJ David Skidmore held a hearing on May 12, 2021 and issued a decision on June 9, 2021 finding Plaintiff not disabled since November 15, 2019. AR 98-135, 162-78. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, Plaintiff contends the ALJ erred in: (1) evaluating the medical opinion evidence, (2) evaluating her subjective testimony, and (3) assessing her residual functional capacity. Dkt. 10, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### I. Whether the ALJ Properly Evaluated Medical Opinion Evidence

Plaintiff contends the ALJ erred in evaluating the medical opinions of Terilee Wingate, PhD., Holly Petaja, PhD. and Kelly Kimbel, LMHC. Dkt. 10, pp. 3-11.

Plaintiff submitted her application after March 27, 2017. AR 136, 147, 165. Under the applicable rules, the ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions" by considering their supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c). The ALJ is specifically required to consider the two most important factors, supportability and consistency. 20 C.F.R. § 416.920c(a). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). The consistency factor involves consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2). Further, under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

**A. Dr. Wingate**

Dr. Wingate conducted an evaluation of Plaintiff on October 15, 2019 and opined that she was overall markedly limited in performing basic work activities, including: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; asking simple questions or requesting assistance; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal work day and work week without interruptions from psychologically based symptoms. AR 376.

The ALJ discounted Dr. Wingate's opinion because (1) it was based on a one-time examination, and (2) it was unsupported by Dr. Wingate's own "examination findings" and other treatment notes showing improvement of Plaintiff's symptoms. *See* AR 170.

With respect to the ALJ's first reason, under the new regulations, the frequency of a claimant's visits with a medical source is a factor the ALJ can consider as it "demonstrate[s] whether the medical source has a longitudinal record understanding of [the claimant's] impairment[s]." *See* 20 C.F.R. § 416.920c(c)(3)(ii). However, it is neither the sole nor determinative factor. The regulations make it clear that that a medical opinion's supportability and consistency are the most important factors considered by the ALJ when considering medical opinions. *See* 20 C.F.R. § 416.920c(b)(1). Thus, that Dr. Wingate has only evaluated Plaintiff once is not by itself a valid reason the ALJ can use to discount the opinion.

With respect to the ALJ's second reason, as previously explained, considering a medical opinion's persuasiveness based on its supportability with "objective medical evidence and supporting explanations" and consistency "with the evidence form the other medical sources and nonmedical sources" are two most important factors an ALJ must consider. *See id*; § 416.920c(c)(2).

Here, the ALJ identified internal inconsistencies within Dr. Wingate's own evaluation, specifically Plaintiff's report of improvement with medication and examination findings, "including [plaintiff's] good grooming, logical and linear speech, normal thought process and thought content despite blunted affect, full orientation, normal perception, normal memory, and the ability to perform a three-step task." *See* AR 170. But the ALJ's assessment is not substantially supported by the record. Though Plaintiff did report medication helped her depression, she also noted it was not effective as to her fatigue. *See* AR 375. While Dr.

Wingate's mental status exam did show some normal results, Plaintiff's fund of knowledge, concentration, abstract thought, and insight and judgment were not found within normal limits. *See* AR 378. An ALJ must set out a "'detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* The ALJ has failed to do so here by neglecting to explain the discrepancies between these findings.

The ALJ also cited a treatment note from April 2020 where Plaintiff reported medication helped her mood, denied depression, and stated "her anxiety levels are much improved as well." AR 170 (citing AR 482). But this lone citation does not substantially support the ALJ's assessment, as Plaintiff's record is replete of several other treatment notes after April 2020 indicating medication has not necessarily been effective in managing Plaintiff's symptoms in the long term. *See* AR 482, 495, 497, 620 ("[medication] is helpful but only for about 1 hr . . . However, lately she's had more anxiety and neg[ative] thoughts"), 622 ("Trouble concentrating on things, such as reading the newspaper or watching television"), 623, 634 ("she does not think her anxiety meds are working"), 636, 640 ("she is having problems concentrating"), 642 ("she has been dealing with a lot of anxiety and negative paranoid thinking"), 644-45, 650. The ALJ's single citation fails to show that ALJ's finding was supported by substantial evidence. Thus, in discounting Dr. Wingate's opinion for its lack of supportability and consistency, the ALJ erred.

**B. Dr. Petaja**

In October 2019, Dr. Holly Petaja conducted a review of Dr. Wingate's evaluation and similarly opined that Plaintiff is markedly limited in performing basic work activities. *See* AR 513.

The ALJ discounted Dr. Petaja's opinion because (1) it was unsupported by Dr. Petaja's own treatment notes showing largely normal "consultative examination findings," and other notes showing improvement of Plaintiff's symptoms, and (2) it was inconsistent with "later examination reports noting that while the claimant had anxiety, she was alert and oriented with good insight and judgment." *See* AR 170-71

The ALJ's evaluation of Dr. Petaja's opinion is similarly lacking as the ALJ's evaluation of Dr. Wingate's opinion. First, unlike Dr. Wingate's evaluation, Dr. Petaja's evaluation did not include a mental status exam, therefore the Court is unsure which "consultative examination findings" the ALJ is referring to and therefore unable to determine if they support the ALJ's finding. *See* AR 170, 511-14. Again, the ALJ must make his own findings and provide his own interpretations. *Garrison*, 759 F.3d at 1012. By simply pointing to the "consultative examination findings" without explanation, the ALJ has failed to do so here. Assuming the ALJ was referring to Dr. Wingate's mental status exam findings, as discussed above, those results do not substantially support the finding that Plaintiff's marked limitations are inconsistent with largely normal findings.

In discounting Dr. Petaja's opinion, the ALJ also again cites the same April 2020 treatment note the ALJ cited to discount Dr. Wingate's opinion. But as discussed above, this note alone does not substantially support the ALJ's finding that Plaintiff improved with treatment because the remaining of Plaintiff's record indicates the contrary. Thus, in discounting Dr. Petaja's opinion for its inconsistency with her own findings and the record, the ALJ erred.

With regards to the ALJ's second reason, it is not the job of the reviewing court to comb the administrative record to find specific conflicts. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Here, the ALJ explained that Dr. Petaja's opinion was inconsistent with "later examination reports," but does not direct the Court to the specific examinations which purport to support his evaluation. *See* AR 170-71. The Court, therefore, cannot say that the ALJ reasonably discounted Dr. Petaja's opinion for this reason. And because the ALJ has failed to provide at least one reason to discount Dr. Petaja's reasons, the Court finds the ALJ erred.

**C. Ms. Kelly Kimbel, LMHC**

Ms. Kimbel, one of Plaintiff's treating sources, completed a medical source statement on May 5, 2021, and indicated that Plaintiff has functional limitations caused by her psychiatric conditions and symptoms which persist even with treatment. *See* AR 660-61. In the statement, Ms. Kimbel indicated that these functional limitations affect Plaintiff's understanding, remembering, or applying information; her ability to interact with others; concentration, persistence, or pace; and ability to adapt or manage herself. AR 661. She further indicated that if Plaintiff were to work, Plaintiff would only be able to do so for four hours a day and no more than 20 days a week. *See id*.

Ms. Kimbel's opinion is substantially similar to Dr. Wingate's and Dr. Petaja's opinions. and the ALJ's assessment of it is nearly identical to his assessment of the other medical sources, providing the same reasons and citing to the same treatment notes. *See* AR 171-72, 374-78, 511-14, 66-61. As the Court has found that these reasons and treatment notes do not substantially support the ALJ's evaluation of Dr. Wingate's and Dr. Petaja's opinions, the Court similarly finds here that they do not support the ALJ's evaluation of Ms. Kimbel's opinion. Accordingly, the Court finds the ALJ erred in discounting Ms. Kimbel's opinion.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination*." Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, the ALJ's errors in evaluating the medical opinions of Dr. Wingate, Dr. Petaja, and Ms. Kimbel were not harmless. Had the ALJ properly evaluated their opinions, the ALJ may have found Plaintiff disabled or included additional limitations in the RFC. Accordingly, the ALJ's errors are not harmless and require reversal.

**II.     Whether the ALJ Properly Evaluated Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred in evaluating her symptom testimony. Dkt. 10, pp. 11-15.

Plaintiff testified that her anxiety, depression, and fatigue prevent her from working. AR 107-10. She explained that because of these symptoms, she cannot focus or concentrate, and she begins to feel tired after doing something, including household tasks, for 30 minutes to an hour. *See id*. Plaintiff testified that she has experienced fatigue every day for the last two years. AR 113-14.

The ALJ discounted Plaintiff's testimony, finding it inconsistent with her (1) activities of daily living, (2) her medical record showing she improved from treatment, and (3) "poor work history." AR 170-71.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 343, 346-47 (9th Cir. 1991)). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161 F.3d at 601).

With regards to the ALJ's first reason, an ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the ALJ pointed to Plaintiff's function report which states that she meditates, performs light exercise such as walking for 15 minutes, visits her parents, drives, shops in stores, uses a computer, and manages finances, to undermine her statements about the severity of her symptoms. AR 170, 297. But Plaintiff herself never denied being able to perform these activities, only stating that she can only engage in them for 30 minutes or to an hour. AR 112-13. Plaintiff's statements in her function report mirrors her statements during the testimony, thus the Court cannot say that they are contradictory to each other. Further, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603). Thus, in discounting Plaintiff's testimony for her activities of daily living, the ALJ erred.

With regards to the ALJ's second reason, evidence that medical treatment helped a claimant "'return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders' . . . can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). But "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ points to certain treatment notes purporting to show Plaintiff's improvement from medication and therapy, but the ALJ's characterization is not supported by the overall record. *See* AR 170-71 (citing AR 382-407, 410, 476, 479, 482-83, 485, 411, 620-21, 656). Plaintiff's treatment notes from Pathways Mental Health Services show that she presented alert and oriented, and from November 2018 through June 2019, she was "feeling okay" in several appointments. *See* AR 389-406. Yet subsequent notes show Plaintiff's anxiety had returned and she continued struggling with addressing her issues. *See* AR 382-89, 407. Other treatment notes identified by the ALJ also show Plaintiff's symptoms continued to vary in intensity and severity. In April and May 2020, Plaintiff reported medication helped her mood, but she remained feeling very fatigued. AR 479, 482-83. In October 2020, Plaintiff's anxiety increased again and she reported her medication was only helpful for an hour, frequently caused fatigue, and she had more negative thoughts. *See* AR 620. Finally, a January 2021 treatment shows Plaintiff's medications "have not worked well." AR 656. Given that the treatment notes identified by the ALJ indicate Plaintiff's symptoms varied in severity and intensity, the Court cannot say the ALJ reasonably discounted Plaintiff's testimony for its inconsistency with the medical record.

Finally, with regards to the ALJ's third reason, the ALJ may consider a claimant's credibility based on [her] work record. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); *Tommasetti v. Astrue*, 533 F.3d at 1040 (finding lack of motivation to work is a sufficient reason to discount a plaintiff's testimony). Here, the ALJ cites Plaintiff's earning history showing Plaintiff engaged in very little substantial activity within the past 15 years and that she earned only $449.09 in 2007, $2,295.68 in 2010, and $1,805.31 in 2011. *See* AR 291-92. However, when considering the ALJ's erroneous evaluation of Plaintiff's record as a whole, this reason by itself is an insufficient reason to support the ALJ's discounting of Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony).

By failing to provide at least one clear and convincing reason to discount Plaintiff's testimony, the ALJ erred. As previously stated, an error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout*, 454 at 1055; *see Molina*, 674 F.3d at 1115. Had the ALJ properly evaluated Plaintiff's testimony, the ALJ may have incorporated different limitations into Plaintiff's RFC and thus change the ALJ's decision that Plaintiff was not disabled. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal.

### III. Whether the ALJ Erred at Step Two and Properly Assessed Plaintiff's RFC

Plaintiff contends the ALJ erred at step two by failing to find her L4-5 central canal stenosis and bladder impairment "severe" at step two of the sequential evaluation process, and improperly assessed her RFC because it excluded limitations relating to these impairments. Dkt. 10, p. 15-16.

At step two, the ALJ determines whether the claimant "has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. § 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

Here, the ALJ found Plaintiff had the severe impairments of major depressive disorder and generalized anxiety disorder but excluded any physical impairments. *See* AR 167-68. The ALJ found Plaintiff's bladder and lumbar impairments medically determinable, yet "non-severe" based on a prior administrative medical finding and Plaintiff's conservative medical treatment. *See* AR 167 (citing AR 147-60, 411, 519, 535, 550, 563-608). The record shows that in May 2019, Dr. Gilbert only found severe mental impairments. AR 153. In July 2020, Plaintiff reported symptoms of urinary urgency but described them as "mild." AR 550. Treatment records cited by the ALJ also include Plaintiff's report that she might have had a bladder infection, but that she was "feeling essentially back to normal, just thought she should mention it." AR 411. In October 2020, Plaintiff stated she was "doing better" from her bladder symptoms and she was told to continue taking medication. AR 535. Treatment notes from Plaintiff's physical therapy sessions similarly showed she made improvements and was "progressing well." *See* AR 565-60. Plaintiff's physical exam for a follow up visit for her spine also showed her sensation was intact,

her strength was rated "5/5 throughout the bilateral lower limbs," and her muscle bulk and tone were normal. *See* AR 519. Plaintiff's medical record does not indicate her physical impairments' severity would "significantly limit" her ability to perform basic work activities, therefore the Court cannot say the ALJ erred in determining them as non-severe. *See* 20 C.F.R. § 416.921(a).

However, the ALJ did err by then failing to consider these impairments in his assessment of Plaintiff's RFC. While the step two inquiry is "merely a threshold determination meant to screen out weak claims," the ALJ must nonetheless consider the claimant's limitations from all impairments, including those that are not severe. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Here, in assessing Plaintiff's RFC, the ALJ appeared to have only considered Plaintiff's mental impairments and fatigue. *See* AR 169-71. Notably, in evaluating Plaintiff's testimony, the ALJ only acknowledged her statements about her difficulties in concertation, anxiety, depression, and fatigue. *See* AR 169. By failing to discuss Plaintiff's physical impairments, the ALJ erred in the assessment of Plaintiff's RFC.

**IV. Remedy**

Plaintiff requests that this matter be reversed for an award of benefits, or alternatively, for further proceedings. Dkt. 10, p. 17-18.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen,* 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined that the ALJ erred in evaluating the medical opinions of Dr. Wingate, Dr. Petaja, and Ms. Kimbel, and Plaintiff's testimony, and that the ALJ erred in the assessment of Plaintiff's RFC. Thus, there remain outstanding issues that must be resolved, and remanding for further proceedings is the appropriate remedy. On remand, the ALJ shall reevaluate the medical opinion evidence, Plaintiff's testimony, and Plaintiff's RFC.

CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ erred in concluding Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further proceedings in accordance with the findings contained herein.

Dated this 24th day of October, 2022.

David W. Christel
United States Magistrate Judge